UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 651, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 19-105-DCR |
| V. | ) ) | |
| MICHAEL PHILBECK, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff International Brotherhood of Teamsters Local 651 ("Local 651" or "the Union") filed a motion for a temporary restraining order and/or a preliminary injunction seeking to enjoin Defendant Michael Philbeck from accessing, administering, or posting on social media accounts that are held out, "passed off," or could be perceived as official accounts or pages of Local 651. [Record No. 2] Local 651 also seeks to enjoin Philbeck from holding himself as a current officer of the Union or attempting to gain access to unauthorized information. [*Id.*] Lastly, Local 651 seeks to compel Philbeck to turn over all passwords for Local 651's social media accounts. [*Id.*] A preliminary injunction will be granted in accordance with Federal Rule of Civil Procedure 65 to prohibit Philbeck from posting on social media pages affiliated or associated with the Union without properly identifying himself. Philbeck will also be prohibited from holding himself out as a Union official.

**I.**

Local 651 filed this action on March 15, 2019, asserting that the defendant breached contracts under Section 301 of the Labor-Management Relations Act ("LMRA"), breached his

fiduciary duty under the Labor-Management Reporting and Disclosure Act ("LMRDA"), converted the Union's property, and appropriated the plaintiff's name or likeness. [Record No. 1] The plaintiff also asserts claims for false designation of origin under the Lanham Act and unfair competition. [Record No. 1] It filed a motion for injunctive relief, seeking to enjoin Philbeck from accessing and posting on Local 651 affiliated social media pages and from holding himself out as an official of Local 651. [Record No. 2] A hearing was held regarding the motion on March 22, 2019. Testimony presented was not particularly helpful, as the undersigned compared the parties actions as akin to 7th graders' engaged in a food fight.

Philbeck served as president of Local 651 from January 1, 2010, to December 31, 2018. [Record No. 1, p. 2] He lost his re-election as Local 651 president in November 2018, but he remains a member of the Union. [Record No. 1, p. 1] After losing the election, Philbeck allegedly removed property that belonged to the Union, including a digital camera, laptop, and points on the Union credit card (which he converted to gift cards) that he retained and/or used for his personal benefit. [Record No. 1, p. 1]

While Philbeck was president of the Union, he maintained control over a Facebook page and created a union member group on Facebook. [Record No. 1, p. 2] He still retains control over the Facebook group, holds the Facebook page out as an official union page, and will not give administrative access to any current Union official. [Record No. 1, p. 2] Philbeck was an administrator of the Local 651 Facebook page, its Twitter account, and the Local 651 UPS member resource group. [Record No. 1] He and former Union staff members (Stephanie Buchenroth and Paul Trujillo) had access to and regularly posted on these accounts. [Record No. 1, p. 4] Philbeck later removed Stephanie Buchenroth's administrative privileges from the accounts. [Record No. 1, p. 4] He also allegedly changed the password on the Facebook

page so other administrators cannot access it. [Record No. 1, p. 5] Philbeck continues to post on the page and hold it out as the official Local 651 Facebook page. [Record No. 1, p. 6-8] He also created an "Official Teamsters Local Member Resourse [sic] Group" in February 2019. [Record No. 1, p. 9] Philbeck has blocked previous administrators and will not give current Local 651 officials access to any of the social media pages or groups. [Record No. 2-1, p. 2] Additionally, the plaintiff attempted to contact Facebook to get the pages shut down, but its attempt has unsuccessful as of this date. Thus, the plaintiff does not have access to the social media accounts and cannot get them shut down.

Local 651 president-elect Michael Watson notified Philbeck on November 20, 2018, not to make any extraordinary expenditures ($1,000.00 or more) without notifying the incoming officers. [Record No. 2-1, p. 5] Watson requested a meeting with Philbeck on December 20, 2018, regarding his extraordinary expenditures, but no meeting has occurred. [Record No. 1, p. 5] Philbeck allegedly paid himself and other business agents $20,000 for accrued vacation retained during previous years. [Record No. 1, p. 6] And he allegedly kept a $2,000 laptop for himself, but only paid the Union $200 for it. [Record No. 1, p. 6] He also kept a digital camera without proper authorization from the Union. [Record No. 1, p. 6] Further, he allegedly converted 165,000 points (worth more than $1,600.00) into gift cards and other items for his personal use. [Record No. 1, p. 6]

## II.

### a. Elements of a Preliminary Injunction

A preliminary injunction has been characterized as "one of the most drastic tools in the arsenal of judicial remedies." *Am. Civ. Liberties Union of Ky. v. McCreary Cnty., Ky.,* 354 F.3d 438, 444 (6th Cir. 2003). Preliminary injunctions are utilized to "preserve the relative

positions of the parties until a trial on the merits can be held." *Univ. of Texas, et al. v. Camenisch*, 451 U.S. 390, 395 (1981). The Court looks at the following four factors in deciding whether to issue a preliminary injunction:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)); *see also Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015). The four factors should "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Additionally, the factors do not need to be given equal weight. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998).

The plaintiff bears the burden of establishing that a preliminary injunction is proper. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir. 2007). However, the proof needed is greater than the proof required to survive a summary judgment motion. *Leary*, 228 F.3d at 739.

      i.    <u>The plaintiff will likely be successful on the merits of its claims.</u>

The plaintiff is not required to prove its case in full for the issuance of a preliminary injunction. But to establish success on the merits of the claims, the plaintiff must show more

than a mere possibility of success. *Certified Restoration*, 511 F.3d at 543 (internal quotations and citations omitted). "It is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as make them fair ground for litigation and thus for more deliberative investigation." *Id*. (citation omitted).

### a. Section 301 of LMRA

The plaintiff first claims that Philbeck committed a breach of contract under Section 301 of the LMRA. 29 U.S.C. § 185. Section 301 of the LMRA allows for breach of contract actions between labor organizations and employees, like the breach of a union constitution. *See Wooddell v. International Bhd. of Elec. Workers*, Local 71, 502 U.S. 93, 101 (1991); *Madsen v. Am. Fed'n of Musicians of the United States*, 13 F. Supp. 3d 820, 824-26 (N.D. Ohio 2014) ("§ 301 also applies to lawsuits between individual union members and labor organizations, if the allegations include a violation of the union constitution or other contract between labor organization"). *But see Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers v. Doerman*, 2005 U.S. Dist. LEXIS 9012 (S.D. Ohio Apr. 18, 2005) (declining to extend *Wooddell* to cases of the Union against individual members).

Local 651 believes that Philbeck is in breach of the International Brotherhood of Teamsters Constitution and the Bylaws of Local 651. It argues that Philbeck is in breach of the documents because he failed to turn over Union property and failed to get approval for extraordinary expenditures as required by the Constitution and Bylaws. The plaintiff can likely succeed on its claim under Section 301 of the LMRA because it appears that Philbeck violated the IBT Constitution.[1]

---

[1] Unlike international union constitutions, local bylaws are not contracts within the meaning of Section 301. *See Madsen*, 13 F. Supp. 3d at 824-26.

### b. Section 501 of LMRDA

The plaintiff also claims that Philbeck breached his fiduciary duty under Section 501 of the LMRDA. Section 501(a) states:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

29 U.S.C. § 501(a). Philbeck was an officer of Local 651 through December 2018. It appears he did not hold the money and property of the Union solely for the benefit of the Union and its members. He allegedly converted credit card rewards points for his own benefit, he kept a laptop and camera from the Union, and allegedly unnecessarily spent $4,600 on calendars. Accordingly, it appears that the Union will likely prevail on a claim under Section 501(a) of the LMRDA.

### c. Invasion of privacy

An individual may invade another's privacy by appropriating another's name or likeness. *See McCall v. Courier-Journal & Louisville Times Co.,* 623 S.W.2d 882, 887 (Ky. 1981). Section 652C of the Restatement (Second) of Torts creates liability for "the defendant's appropriation, to his own use or benefit, of the reputation, prestige, social or commercial

standing, public interest or other values of the plaintiff's name or likeness." *Bowling v. Bowling*, 1992 U.S. App. LEXIS 18505 *1, *14 (6th Cir. 1992).

The plaintiff argues that Philbeck misappropriated the Union's name by controlling not only the old social media accounts but by creating a new Local 651 page. The plaintiff asserts that it has an interest in its name and likeness, and Philbeck is benefitting from the Teamsters name by taking advantage of member access, prestige, and the reputation as an official Teamsters Local 651 page. Thus, it appears that Local 651 is likely to prevail on a claim of invasion of privacy because Philbeck is utilizing the plaintiff's name to take advantage of its reputation for his own benefit.

### d. Conversion

Conversion is the "wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014). To prevail on a claim of conversion in Kentucky a plaintiff must show:

> (1) the plaintiff had legal title to the converted property;
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
> (4) the defendant intended to interfere with the plaintiff's possession;
> (5) the plaintiff made some demand for the property's return which the defendant refused;
> (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
> (7) the plaintiff suffered damage by the loss of the property.

*Id.* (citing *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)). Philbeck allegedly took the camera, laptop, and the Union's credit card points and converted them to gift cards for his own personal use. He also continues to use the

social media sites and not allow the plaintiff to access the accounts. The plaintiff is likely to prevail on a claim of conversion under Kentucky law. Because evidence presented during the hearing indicates that the laptop, camera, and union credit card were property of the union, the defendant exercised dominion over the property, and denied Local 651 the right to use it. Additionally, it appears that the defendant intended to interfere with the plaintiff's possession and the current president attempted to get the property back. Philbeck taking the property was the legal cause of Local 651's loss of the property. Finally, the plaintiff appears to have suffered damage as a result of the defendant's actions.

### e. Trademark and Unfair Competition Laws

The plaintiff last claims that Philbeck violated the Lanham Act and Kentucky common law by using the Teamsters name and logo. The plaintiff argues that the Facebook pages Philbeck is still using include the Teamsters name and logo. It claims that the logo and name are distinct trademarks and collective membership markings.

Title 15 of the United States Code, Section 1125(a)(1)(A) creates a civil cause of action for:

> [using] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

A "federal trademark infringement analysis is identical to Kentucky's common law unfair competition analysis." *Eat BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 527 (E.D. Ky. 2014). The plaintiff must establish that it held trademarks, the marks are valid and protectable, it did not consent to the use of those marks, and the use of the marks was likely to cause confusion.

*Id.* at 527-28*; see also Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F. Supp. 2d 561, 564 (E.D. Ky. 2004). Ownership rights of a trademark "follow only from prior appropriation and actual use in the market." *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.,* 146 F.3d 350, 356 (6th Cir. 1998) (internal quotations and citations omitted). The plaintiff is likely to succeed on the trademark infringement claims because the logos are valid and protectable, it did not consent to Philbeck continuing to use the logos, and the use of the logos is likely to cause confusion.

      ii.      <u>There is a threat of irreparable injury.</u>

The plaintiff must show that "irreparable injury is likely in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 8 (2008). An injury is irreparable if it is not fully compensable by monetary damages. *Overstreet*, 305 F.3d at 578.

The plaintiff argues that not granting a preliminary injunction will result in irreparable injury. [Record No. 2-1, p. 8] The defendant continues to use the social media pages and hold them out as official union pages. [Record No. 2-1, p. 8] He allegedly has posted inaccurate information and authored posts that have caused tension with other local unions. [Record No. 2-1, p. 8] The plaintiff fears that it may be liable for any wrongdoing on the page because it cannot control Philbeck's posts. [Record No. 2-1, p. 8] He also allegedly contacted vendors that do business with the Union regarding member events and discounts. [Record No. 2-1, p. 11] Further, he has held himself out as an acting Union official. The continued use of the plaintiff's social media pages and holding himself out as a union official likely will cause irreparable injury that cannot be compensated solely through monetary damages because of potential damages to Local 651's reputation.

      iii.     <u>A preliminary injunction will not cause substantial harm to others.</u>

Local 651 asserts that no third parties will be harmed by the issuance of a preliminary injunction. [Record No. 2-1] Granting a preliminary injunction prohibiting Philbeck from holding himself out as a union official and posting on the official social media sites would not increase the likelihood of harm to others, if anything it may cause less confusion among members of the Union.

      iv.     <u>A preliminary injunction is in the public interest.</u>

The plaintiff contends that the public and other union members will benefit from the issuance of a preliminary injunction because it will ensure that the resources of the Union are actually being run by the Union. The public interest would be served by enjoining Philbeck from posting on the Facebook accounts because it would stop posts from a non-Union official and may help stop the spread of misinformation.

**b. Security Requirement**

Federal Rule of Civil Procedure 65(c) states "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, the Sixth Circuit Court of Appeals appears to hold that "the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995); *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013). The plaintiff argues that its case is strong and there is a strong public interest, thus, the Court should forego a bond. However, a bond is appropriate and will be set at $5,000.00.

## III.

All four factors weigh in favor of the issuance of limited injunctive relief in the present case. *McPherson*, 119 F.3d at 459. It is likely that the plaintiff will succeed on the merits of its claims and would suffer a degree of irreparable injury if a preliminary injunction is not issued. Additionally, a preliminary injunction would not cause substantial harm to others and the public interest would be served by the issuance of a preliminary injunction. Accordingly, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion for preliminary injunction [Record No. 2] is **GRANTED, in part.** The plaintiff's request for a temporary restraining order [Record No. 2] is **DENIED** as moot. A hearing having been held in the case, all other relief requested in the plaintiff's motion [Record No. 2] is **DENIED** as moot.

2. Defendant Michael Philbeck is **ENJOINED** from posting on the social media accounts he controls that are portrayed, publicized, or otherwise held out or could be perceived as official accounts or pages of the Union without identifying himself as the poster. Defendant must identify himself as the author of any post on any social media page perceived as an official page of the Union in bold print and all caps. Defendant must also state that he is not a current officer of the Union in any of his posts.

3. Defendant Philbeck is **ENJOINED** from holding himself out as a current officer of the Union.

4. The plaintiff shall post a bond of $5,000.00, at which time this injunction shall be effective.

Dated: March 22, 2019.



Signed By:
*Danny C. Reeves*
United States District Judge