UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 651, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 19-105-DCR |
| V. | ) ) | |
| MICHAEL PHILBECK, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Michael Philbeck has filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 33] Philbeck's motion will be denied because the Court has subject matter jurisdiction over all of Plaintiff International Brotherhood of Teamsters Local 651's (referred to hereafter as "Local 651" or "the Union") claims and it has pled sufficient facts to state claims for relief.

**I.**

Philbeck previously served as president of Local 651 from January 1, 2010, to December 31, 2018. [Record No. 32, p. 3-4] Philbeck lost his bid for re-election for president of Local 651 to Michael Watson in November 2018, but he remains a member of the Union. [Record No. 32, p. 4] Following the election loss, Philbeck allegedly removed property that belonged to the Local 651, including a digital camera, a laptop, and points on the Union credit card (which he converted to gift cards) that he retained for his personal benefit and gave to other business agents. [Record No. 32, p. 1-2]

While Philbeck was president of Local 651, he maintained control over its Facebook page and created a Union member group on Facebook. [Record No. 32, p. 3] Philbeck presently retains control over the Facebook pages. [Record No. 32, p. 3] Philbeck was previously enjoined by this Court from holding himself out as a current officer of Local 651, required to identify himself as the author of the posts on the pages, and required that he explain that the pages were not official Union pages. [Record No. 14] The Court later modified the injunction to require Philbeck to post a clear disclaimer at the beginning and end of every post on social media. [Record No. 52]

Watson notified Philbeck on November 20, 2018, not to make any extraordinary expenditures ($1,000.00 or more) without notifying the incoming officers of Local 651. [Record No. 32-5] Article XXII, Section 4 of the IBT Constitution states:

> During the period between the date of election and the end of the term of office, no extraordinary expenditure of Local Union funds shall be made, and no action shall be taken that commits the Local Union to make such extraordinary expenditures in the future, without the approval of the officers-elect and the membership.

[Record No. 32-3, p. 170] The IBT Constitution further requires that outgoing officers "promptly deliver any money or property of [the] Union in [his] possession to [his] successor in office." [Record No. 32-3, p. 9] Watson requested a meeting with Philbeck on December 20, 2018, to discuss alleged extraordinary expenditures, but no meeting took place. [Record No. 32, pp. 5-6] Philbeck allegedly paid himself and other business agents $20,000.00 for accrued vacation retained during previous years. [Record No. 32, p. 6] He also allegedly kept a $2,000.00 laptop for himself, but only paid the Union $200.00 for it. [Record No. 32, p. 6] Additionally, he kept a digital camera without proper authorization from Local 651. [Record

No. 32, p. 6] Next, Philbeck allegedly converted 165,000 credit card points (worth more than $1,600.00) to gift cards and other items for personal use. [Record No. 32, p. 6]

Local 651 filed this action on March 15, 2019, asserting that Philbeck breached contracts under Section 301 of the Labor-Management Relations Act ("LMRA") (Count I), breached his fiduciary duty under the Labor-Management Reporting and Disclosure Act ("LMRDA") (Count II), and converted Local 651's property (Count III). [Record No. 32] The plaintiff also asserts claims for invasion of privacy (Count IV), false designation of origin under the Lanham Act (Count V) and unfair competition (Count VI). [Record No. 32]

**II**.

i. **Federal Rule of Civil Procedure 12(b)(1)**

The plaintiff has the burden of proving that the federal court has jurisdiction to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). "[T]he court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." *Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir. 1990). A motion to dismiss under Rule 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A factual attack challenges the actual existence of the court's jurisdiction and no presumption of truthfulness applies to the allegations. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

ii. **Federal Rule of Civil Procedure 12(b)(6)**

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While plaintiffs are not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, plaintiffs must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### III.

**i. This Court has subject matter jurisdiction to hear Local 651's breach of contract claim under Section 301 of the LMRA and Local 651 has pled sufficient facts to state a claim for relief.**

Section 301 of the LMRA allows for breach of contract actions between labor organizations and employees, like the breach of a union constitution. *See Wooddell v. International Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991); *Madsen v. Am. Fed'n of Musicians of the United States*, 13 F. Supp. 3d 820, 824-26 (N.D. Ohio 2014) ("§ 301 also applies to lawsuits between individual union members and labor organizations, if the allegations include a violation of the union constitution or other contract between labor organizations"). *But see Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers v. Doerman*, No. 1:03-cv-620, 2005 U.S. Dist. LEXIS 9012 (S.D. Ohio Apr. 18, 2005) (declining to extend *Wooddell* to cases of the union against individual members for damages).

Philbeck asserts that the Court should dismiss Local 651's breach of contract claim under the LMRA because the LMRA does not permit claims by unions against individual

members. Philbeck references *Building Material & Dump Truck Drivers, Local 420 v. Traweek*, in asserting that a union cannot bring a suit against an individual union member for breach of internal union rules. 867 F.2d 500, 507-08 (9th Cir. 1989). However, the United States Court of Appeals for the Ninth Circuit in *SEIU v. Nat'l Union of Healthcare Workers* concluded that suits could be brought against individual union members for injunctive relief. 598 F.3d 1061 (9th Cir. 2010). Additionally, the Second and Eleventh Circuits have explicitly concluded that § 301(a) permits claims for injunctive relief against individual defendants for violations of a union constitution. *See Shea v. McCarthy*, 953 F.2d 29, 32 (2d Cir. 1992); *Int'l Union of Elec. v. Statham*, 97 F.3d 1416, 1421-22 (11th Cir. 1996). In *SEIU*, the court also noted that other circuits have allowed § 301(a) claims against individual union members without explicitly concluding that § 301(a) provides jurisdiction over individual union members or former officers. *See SEIU*, 598 F.3d at 1070-71 (citing *Tile, Marble, Terrazzo, Finishers, Int'l Union v. Local 32*, 896 F.2d 1404, 1416 (3d Cir. 1990); *Consolidation Coal Co. v. Local 1702, United Mineworkers*, 683 F.2d 827, 829-30 (4th Cir. 1982)).

The Court in *SEIU* distinguished *Traweek*, noting that *Traweek* was an action for damages, whereas *SEIU* was an action for injunctive relief. *Id*. at 1071. It explained that "providing a federal forum for injunctive relief against the former officers and leaders of [the union] promotes the stability of the parent-local relationship and the representation of the rank-and-file members." *Id*. at 1072. The United States District Court for the Western District of Kentucky has also allowed a § 301 claim by a local union against former officers to go forward on a motion to dismiss. *Gen. Drivers, Warehousemen, & Helpers Local Union No. 89 v. Winstead*, No. 3:03CV-791-S, 2004 U.S. Dist. LEXIS 27841 (W.D. Ky. June 22, 2004). Based

on the foregoing authorities, the undersigned concludes that this Court has jurisdiction to hear suits by unions against individual members or former officers of the union.

Philbeck next asserts that this claim cannot proceed because it only requires interpretation of the local bylaws, not the IBT Constitution. Union constitutions are contracts between labor organizations and suits involving violations of union constitutions may be brought under § 301. *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Local 334, United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 452 U.S. 615, 621 (1981). In *Kitzmann v. Local 619-M Graphic Commc'ns Conference of the Int'l Bhd. of Teamsters*, the Sixth Circuit concluded that the international constitution and the district council constitution were "contracts between labor organizations" requiring § 301 preemption and that violations of the local bylaws would fall within the court's supplemental jurisdiction. 415 F. App'x 714, 718-20 (6th Cir. 2011).

Local 651 argues that this claim falls under the IBT Constitution because the bylaws must comply with the IBT Constitution and its claims require an interpretation of the IBT Constitution. It asserts that Philbeck violated the IBT Constitution by making extraordinary expenditures, in violation of Article XXII, Section 4(e) of the IBT Constitution and violated the oath of office by not promptly turning over money or property belonging to the Union. Local 651 claims that Philbeck paid himself and business agents more than $20,000.00 for alleged accrued vacation, paid only $200.00 to the Union for a $2000.00 laptop, and kept a digital camera valued at more than $1,000.00. Local 651 has pled sufficient facts demonstrating that the claims against Philbeck fall under the IBT Constitution. And to the

extent the claims require interpretation of the Local's bylaws, the claims would fall under the Court's supplemental jurisdiction. *Id*.

The Court can exercise jurisdiction over Philbeck for alleged violations of the IBT Constitution but only to the extent that Local 651 is seeking injunctive relief. Local 651 asserts that it is only seeking injunctive relief under § 301. It merely requests the return of and access to the Facebook page. Accordingly, Local 651's LMRA claim may go forward.

### ii. The Court has subject matter jurisdiction over Local 651's claim for breach of fiduciary duty under the LMRDA, 29 U.S.C. § 501(a).

Local 651 contends that this Court has federal question jurisdiction over its LMRDA claim. Section 501(a) states:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

29 U.S.C. § 501(a).

Conversely, Philbeck argues this Court should dismiss the LMRDA claim because it does not provide the Union a private right of action against him. He contends that § 501 allows for suits by union members against union officials, but not the union against former officials.

Private rights of action can be either express or implied. *See Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 532-33 (1989). The Supreme Court has considered the following four questions in determining whether to imply a federal cause of action:

> (1) whether the statute created a federal right in favor of the plaintiff; (2) whether there existed explicit or implicit evidence of congressional intent either to create or deny a cause of action; (3) whether implying a cause of action was consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action was one traditionally relegated to the states.

*International Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 285 (7th Cir. 2009) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The Seventh Circuit noted, however, that the Supreme Court has "distanced itself from the approach in *Cort*." *Id*. It explained that the Supreme Court focuses on congressional intent in determining if there is a private right of action. *Id*.; *see also Bowling Green v. Martin Land Development Co*., 561 F.3d 556, 559 (6th Cir. 2009) ("subsequent [Supreme Court] decisions have made clear that congressional intent is the 'determinative factor.'").

There is a circuit split regarding whether § 501 of the LMRDA provides a union with a federal cause of action against a union official for breach of a fiduciary duty. *Compare Traweek,* 867 F.2d 500 (finding no implied cause of action), *with Ward*, 563 F.3d 276; *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416 (11th Cir. 1996) (finding an implied cause of action); *Int'l Union, Sec. Police & Fire Professionals of Am. v. Faye*, 828 F.3d 969, 975 (D.C. Cir. 2016) (concluding that the union is a proper plaintiff under § 501). The Supreme Court has acknowledged the split of authority but declined to resolve the issue. *Guidry v. Sheet Metal*

*Workers Nat. Pension Fund*, 493 U.S. 365, 374 n.16 (1990). While there does not appear to be any Sixth Circuit authority, decisions from other circuits are instructive.

The Ninth Circuit interpreted § 501 to mean that suits are available to individual members of the union, not the union itself. *Traweek*, 867 F.2d at 506-07. The court explained that federal jurisdictional statutes should be construed narrowly and there is a "federal policy of noninterference in the internal affairs of unions and labor matters." *Id*. But this case can be distinguished from *Traweek*. While *Traweek* involved a claim brought under § 501(b)[1], Local 651's claim is brought under § 501(a). *See Hawaii Regional Council of Carpenters v. Yoshimura*, 237 F. Supp. 3d 1029, 1035-36 (D. Haw. 2017) (explaining that *Traweek* did not foreclose the possibility of the union maintaining a cause of action under § 501(a), only under § 501(b)).

On the other hand, the Eleventh Circuit has concluded that § 501(a) implies a cause of action that allows unions to bring suit on their own behalf. *Statham*, 97 F.3d at 1421. The court reasoned that while Congress could have intended for unions to be limited to state-law remedies, it was more in keeping with the statute creating union rights for Congress to have implicitly given unions the ability to enforce those rights in federal court. *Id*. at 1420-21. In examining the legislative history of the LMRDA, the court noted that the purpose of the Act was to reign in corruption within union leadership. *Id*.

---

[1] Title 29 of the United States Code Section 501(b) provides that "[w]hen any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization."

The Seventh Circuit, relying on the decision in *Statham,* also concluded that § 501(a) implies a private right of action. *Ward*, 563 F.3d at 286-88. The court explained that the derivative-type of action created in § 501(b) reinforces the idea that § 501(a) contains an implied right of action for unions. *Id*. It further explained that "a statute [such as § 501(a)] that imposes fiduciary duties necessarily implies corresponding rights to the beneficiaries." *Id*. at 286. It detailed that the statutory language implies the creation of a federal remedy for the union because the statute includes a potential defense (an exculpatory clause). *Id*. The court concluded that "labor organizations have an implied cause of action under § 501(a) to sue in federal court for violations of the fiduciary duties imposed by the statute" and "because [the Local] has a federal cause of action for violations of § 501, the district court possessed jurisdiction to hear this case pursuant to the general grant of federal-question jurisdiction, 28 U.S.C. § 1331." *Id*. at 289. Additionally, the Court of Appeals for the D.C. Circuit has determined that a union has the right to bring suit under § 501. *Int'l Union, Sec. Police & Fire Professionals of Am.*, 828 F.3d at 975.

The undersigned finds that the reasoning of the Seventh, Eleventh, and D.C. Circuits is persuasive and concludes that the Union has a private right of action under § 501(a) of the LMRDA. Accordingly, the Court has subject matter jurisdiction to hear Local 651's claim under the LMRDA.

> **iii. Local 651 has pled sufficient facts to state a claim for relief under the Lanham Act and for common law unfair competition.**

Title 15 of the United States Code, Section 1125(a)(1)(A), creates a civil cause of action for:

> [using] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

The plaintiff must establish that it held trademarks, the marks are valid and protectable, it did not consent to the use of those marks, and the use of the marks was likely to cause confusion. *Id*. at 527-28*; see also Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F. Supp. 2d 561, 564 (E.D. Ky. 2004). The plaintiff must also show that the false designation has a substantial economic effect on interstate commerce. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). A "federal trademark infringement analysis is identical to Kentucky's common law unfair competition analysis." *Eat BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 527 (E.D. Ky. 2014).

For purposes of the Lanham Act, "in commerce" means "in connection with the sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1).; *Taubman Co*., 319 F.3d at 774. "Even 'extremely minimal' commercial activity, such as providing a link to a third-party website that sells goods, can trigger liability." *XPO CNW, Inc. v. R+L Carriers, Inc.,* No. 16-10391, 2016 U.S. Dist. LEXIS 124627, at *7-8 (E.D. Mich. Sept. 14, 2016).

The term "services" has been interpreted broadly to encompass non-commercial activity, including fraternities and community programs. *See SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 287 (S.D.N.Y. 2006). The Lanham Act "has also been invoked successfully by and against parties engaged primarily in dissemination of political messages." *Am. Family Life. Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 694 (N.D. Ohio 2002). Further, the Second Circuit has explained that "communicating ideas and purveying points of

view is … a service subject to the controls established by trademark law." *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir. 1997).

Local 651 contends that the Union's name ("Teamsters Local 651") and its logos and that of the international union, which Local 651 is authorized to use, are protectable, distinctive, and recognizable. [Record No. 32, p. 15] It asserts that Philbeck's use of the marks on the social media accounts is likely to create confusion and damage Local 651's reputation and standing in the community. [*Id*.] Local 651 asserts that Philbeck uses the accounts to communicate with members about events, contract negotiations, and disputes with other local unions, employers, the current Local 651 leadership, and the international union. It believes that the number of followers on the accounts and the content of his messages are likely to cause confusion.

Philbeck argues that these claims should be dismissed because the Lanham Act only applies to commercial speech and he did not engage in such speech. [Record No. 33-9, pp 14-15 (citing *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).] However, on March 21, 2019, a post on the "Kentucky Teamsters of the Bluegrass 651," was made about special deals for Local 651 members for the Kentucky Kingdom, Cincinnati Zoo, and Kentucky Speedway. In *XPO CNW, Inc*., the United States District Court for the Eastern District of Michigan found that the extremely minimal bar was met for commercial activity when the defendant posted on its website "R+L Carriers serves all 50 states, Canada, Puerto Rico, the Dominican Republic, and much of the Caribbean. The company offers LTL, Truckload, Business Critical, Logistics and more. To learn about R+L Carrier's Worldwide shipping solutions visit rlc.com." 2016 U.S. Dist. LEXIS 124627 at 8. Similarly, Philbeck's provision of links for discounts to Union members serves to meet the extremely minimal bar for

commercial activity. Further, Local 651 has pled facts that the use of the marks by Philbeck on the social media sites is likely to confuse Union members and the public.

In summary, Local 651 has pled sufficient facts to state a claim for relief under the Lanham Act and common law unfair competition.

### iv. It is appropriate for the Court to exercise supplemental jurisdiction over Local 651's conversion claim.

Conversion is the "wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014). Local 651 alleges that Philbeck converted social media accounts belonging to the Union for his personal use and deprived Local 651's access to them by changing passwords and blocking Local 651 members from accessing them. Philbeck asserts that the Court should not exercise supplemental jurisdiction over this claim if the Court dismisses the claims under the LMRA, LMRDA, and the Lanham Act. The Court has determined, however, that Local 651's federal question claims can go forward. Accordingly, exercising supplemental jurisdiction under 28 U.S.C. § 1367 over Local 651's conversion claim is appropriate.

### v. Local 651 has pled sufficient facts to state a claim for invasion of privacy and the exercise of supplemental jurisdiction is proper.

An individual may invade another's privacy by appropriating another's name or likeness. *See McCall v. Courier-Journal & Louisville Times Co.,* 623 S.W.2d 882, 887 (Ky. 1981). Section 652C of the Restatement (Second) of Torts creates liability for "the defendant's appropriation, to his own use or benefit, of the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Bowling v. Bowling*, No. 91-5920, 1992 U.S. App. LEXIS 18505, at *14 (6th Cir. 1992). This cause of action can be used to provide redress to plaintiffs whose names are used without permission to

advertise a business or product or it can be used "when [a] defendant makes use of the plaintiff's name or likeness for his own purpose and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one." *Id.* (citing Restatement (Second) of Torts 652C cmt. b.).

> In order that there may be liability under the rule stated in this Section, the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness. It is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff, so long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity.

Restatement (Second of Torts), 652C, cmt. c. An individual may appropriate someone's name or likeness by utilizing the goodwill associated with a person's name. *See Thornton v. Western & Southern Fin. Group Beneflex Plan*, 797 F. Supp. 2d 796, 815 (W.D. Ky. 2011).

Philbeck argues that the common law claim for invasion of privacy should be dismissed because there exists no basis for subject matter jurisdiction after dismissing the LMRA, LMRDA, and Lanham Act claims. Again, however, because Local 651's federal question claims can go forward, the exercise of supplemental jurisdiction under § 1367 is proper.

But Philbeck also asserts that even if the Court exercises supplemental jurisdiction that this claim should be dismissed because the Union has neither suffered harm nor alleged any specific harm that it has suffered. Conversely, Local 651 argues that it has an interest in its name and likeness because of the particular qualities and reputation of the name. It contends that, by retaining control over the social media accounts and creating a Facebook group that is being passed off as an official Union group, Philbeck is able to gain from the reputation and prestige that are attached to the Union's name. Further, Local 651 asserts that it has suffered damages because it is unable to properly communicate with its members, has been unwillingly

thrust into inter- and intra-Union disputes, and has been forced to expend resources it otherwise would not have had to expend due to Philbeck's actions. Local 651 has pled sufficient facts to demonstrate that Philbeck has been benefitting from the reputation and prestige of the Union and that it has suffered harm from Philbeck's use of the Union's name and likeness.

IV.

Based on the foregoing analysis, the Court has subject matter jurisdiction over Local 651's claims against Philbeck and Local 651 has stated sufficient facts to state claims for relief. However, Local 651 cannot seek anything other than injunctive relief on its LMRA claim. To the extent Local 651 seeks monetary damages on its LMRA claim, it is barred from doing so.

Accordingly, it is hereby

**ORDERED** that Defendant Michael Philbeck's motion to dismiss [Record No. 33] is **DENIED**.

Dated: October 22, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky