UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 651, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 19-105-DCR |
| V. | ) ) | |
| MICHAEL PHILBECK, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Plaintiff International Brotherhood of Teamsters Local 651 (hereafter, "Local 651" or "the Union") has filed a motion for summary judgment or, alternatively, for a default judgment. [Record No. 68]  As relief, Local 651 requests the passwords and administrative access to a plethora of Facebook pages and a permanent injunction to keep Defendant Michael Philbeck from using the Facebook accounts and to keep him from holding himself out as an officer of the Union.  [*Id.*]  The Union is only seeking the return of the social media accounts; it is not seeking actual damages for other items Philbeck allegedly took and converted for his own use. Because Local 651 has failed to meet its burden on four of its six claims, its motion will be granted, in part, and denied, in part.

**I.**

Defendant Philbeck served as president of Local 651 from January 1, 2010, to December 31, 2018.  [Record No. 1, p. 2]  Although Philbeck lost re-election as Local 651 president in November 2018, he remains a member of the Union.  [Record No. 1, p. 1]  After losing the election, Philbeck allegedly removed property belonging to the Union, including a

digital camera, laptop, and points on the Union credit card (which he converted to gift cards) that he retained for his personal benefit.  [Record No. 1, p. 1]  While Philbeck was president of the Union, he had control over its Facebook page and created a union member group on Facebook.  [Record No. 1, p. 2]  Philbeck removed administrative privileges from other Union executive board members and changed the passwords for the pages following his unsuccessful re-election bid.

Local 651 president-elect Michael Watson notified Philbeck on November 20, 2018, not to make any extraordinary expenditures ($1,000 or more) without notifying the incoming officers. [Record No. 2-1, p. 5] Watson requested a meeting with Philbeck on December 20, 2018, to discuss Philbeck's alleged extraordinary expenditures – including $20,000.00 for accrued vacation retained during previous years, a $2,000.00 laptop, a digital camera, and conversion of 165,000 credit card points into gift cards.  [Record No. 1, p. 6]  But no meeting occurred.

Local 651 filed this action on March 15, 2019, asserting that the defendant breached contracts under Section 301 of the Labor-Management Relations Act ("LMRA"), breached his fiduciary duty under the Labor-Management Reporting and Disclosure Act ("LMRDA"), converted the Union's property, and appropriated the plaintiff's name or likeness.  [Record No. 1]  Local 651 asserts additional claims for false designation of origin under the Lanham Act and unfair competition.  [Record No. 1]

Local 651 filed a motion for a temporary restraining order or a preliminary injunction to enjoin Philbeck from accessing, administering, or posting on social media accounts that are held out, "passed off," or could be perceived as official accounts or pages of Local 651. [Record No. 2]  It also sought to enjoin Philbeck from holding himself out as a current officer

of Local 651 or attempting to gain access to unauthorized information and to compel him to turn over passwords for all of Local 651's social media accounts.  [*Id.*]

This Court granted a preliminary injunction, enjoining Philbeck from posting on the social media accounts he controls that are portrayed, publicized, or otherwise held out or could be perceived as official accounts or pages of the Union without identifying himself as the poster and from holding himself out as a current officer of the Union.   [Record No. 14] Further, Philbeck was required to identify himself as the author of any post on any social media page perceived as an official page of the Union in bold print and all caps and state that he was not a current officer of the Union.  The Court modified the preliminary injunction following a contempt hearing on October 16, 2019.  [Record No. 52]  The Court found that Philbeck violated the original preliminary injunction several times and never indicated that he could not comply with the Court's original order.   The Court required Philbeck to post a clear disclaimer at the beginning and end of every post on social media.

Philbeck filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim for relief.  [Record No. 33]  That motion was denied because the Court has subject matter jurisdiction over the plaintiff's claims and because the plaintiff stated viable claims for relief.  [Record No. 57]  Philbeck then filed a motion for a temporary restraining order and/or a preliminary injunction.  [Record No. 62]  That motion was denied because Philbeck had not asserted claims upon which to base injunctive relief and because injunctive relief would not be appropriate on the merits.  As further noted by the Court, Philbeck sought to enjoin individuals who could not be bound by an injunction.  [Record No. 63]  Philbeck never filed a responsive pleading following the denial of his motion to dismiss.

Local 651 moved for summary judgment requesting a permanent injunction giving it control over the disputed social media accounts, as well as costs and attorney's fees. While there are multiple references to property other than the social media accounts allegedly misappropriated by Philbeck, the plaintiff does not request any form of relief for the other Union property allegedly kept by Philbeck. It only requests passwords and administrative access related to the social media accounts. Specifically, the Union requests passwords and administrative access "for all social media accounts purporting to be official Teamsters Local 651 accounts, including but not limited to, the Teamsters Local 651 Facebook Page, Teamsters Local 651 UPS Member Resource Group, and the Official Teamsters Local 651 Members Resourse [sic] Group." [Record No. 68-1, p. 3] The plaintiff explains that, "based on the Union's First Amended Complaint, it is not seeking actual damages for the goods or monies it believes Philbeck took and converted to his own use. However, the Union still contends that Philbeck engaged in these activities, establishing the predicate violations for the relief it seeks." [Record No. 68-1, p. 7] Philbeck filed a response attempting to assert counterclaims and generally discussing unrelated qualms he has with the Union. [Record No. 77]

**II.**

Entry of summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

-4-

In the typical case, the moving party carries an initial burden to produce evidence to present a prima facie case that the movant is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 317; *see also Angelo v. Kroger Co*., No. 86-3912, 1987 U.S. App. LEXIS 11965, at *24 (6th Cir. Sept. 3, 1987) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.") (internal citations omitted)). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).

 "When a plaintiff is the moving party for summary judgment, the burden is high." *Wells v. Howard Berger Co*., No. 2012-190, 2014 Dist. LEXIS 90094, at *5 (E.D. Ky. July 2, 2014) (citing *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir. 1986)).

> A plaintiff-movant must present evidence that would entitle him to a directed verdict if that evidence were not controverted at trial. If the defendants respond to the motion with controverting evidence which demonstrates a genuine issue of material fact, plaintiff's motion must be denied. However, if, after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendants, then summary judgment will be entered on behalf of the plaintiff-movant.

*United States v. Long*, 121 F. Supp. 3d 763, 767 (N.D. Ohio 2014) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)); *see also Viet v. Le,* 951 F.3d 818, 823 (6th Cir. 2020) ("Rule 56 . . . compels summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (internal citations and quotations omitted). In deciding whether to grant summary judgment, the Court views all the facts and inferences

drawn from the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 58.

### III.

### A.     Dispute Over Ownership of the Social Media Accounts

A dispute over the control of certain social media accounts underpins the plaintiff's

claims.  The question presented is whether Local 651 is the "owner" of the social media

accounts or whether Philbeck is the "owner" of those accounts.

The main Facebook page at issue is facebook.com/teamsterslocal651, currently titled

"Kentucky Teamsters of the Bluegrass 651."  The website is set up as a "Facebook Page,"

which is, "a public-facing platform through which public figures and organizations may

engage with their audience or constituency," instead of a Facebook User's profile.  *Davison v.*

*Loudoun Cty. Bd. of Supervisors*, 227 F. Supp. 3d 605, 610 (E.D. Va. 2017).   Pages are used

for "businesses, brands, and organizations."  *Bland v. Roberts*, 730 F.3d 368, 385 (4th Cir.

2012) (internal citations and quotations omitted).

> A Facebook Page is created by an individual User to represent an organization
> or brand, and that User becomes the first Page Admin, which enables him or her
> to customize the Page, post Status Updates and photos, and access other
> features.  Facebook Users can "like" the Page to become Fans who will then see
> the Page's posts in their Newsfeeds.  The first Page Admin can then grant other
> Facebook Friends various degrees of administrative access to the Page.  Full
> access grants the new Admin equal powers to the original Admin, including the
> ability to remove the original Admin.

*In re CITI, LLC*, 528 B.R. 359, 366 (Bankr. S.D. Tex. 2015).

In *In re CITI, LLC*, the bankruptcy court in the Southern District of Texas sought to

determine whether a social media page can ever become property in a bankruptcy case.  *Id.* at

361.  Similar to the present case, the court had to determine whether the Facebook account and

-6-

other social media pages at issue were business or personal accounts. *Id*. It concluded that, because the Facebook page was originally created as a page for businesses, brands, or organizations, and not an individual person it raised a presumption that it was the business's page. *Id*. at 367-68. Additionally, the court noted that the page was directly linked to the business's website and posted status updates on behalf of the business. *Id*. at 368. It explained many posts on the page were business-related and used for promotion. *Id*. Further, the court concluded that, while the individual used the page for personal reasons and used it to share personal posts, such activity was insufficient to overcome the presumption. *Id*. The court also found that giving employees access to post on the page supported the conclusion that the page was a business page. *Id*. at 370. Finally, it noted that a failure to provide administrative privileges to another individual did not change the character of the page. *Id*.

Here, Local 651 claims that while Philbeck created the Facebook pages, he did so in his official capacity as president. Local 651 asserts that there is no dispute that the Facebook pages and accounts are official property of Local 651 because they were advertised on business cards paid for by the Union, in the Union's newsletter, and on the official website. [Record No. 32-1] Additionally, it asserts that former assistant to the president Stephanie Buchenroth administered and monitored the page while at work. [Record No. 32-2] Philbeck argues that he created the Facebook pages and used them for his own benefit as an "outspoken member for and against many different leaders within the Teamsters organization." Philbeck posted about deals for Union members on the Facebook page.

The page was used to communicate and disseminate information to the Union. Former Business Agent Paul Trulijo provided an affidavit stating that he helped promote, administer, and maintain the "Teamsters Local 651" Facebook page, helped create the UPS Members

-7-

Resource Group, and created the official Union Twitter account. [Record No. 32-1, p. 2-3] Both Trulijo and Buchenroth stated that the Union promoted the Facebook page on business cards and the Union membership journal. [*Id*. at 3; Record No. 32-2, p. 3] Further, Trulijo provided that the page was promoted as the official Facebook page of the Union, and he was an "administrator" of the Facebook page and the UPS Resource Group until Philbeck removed him. [Record No. 32-1, p. 3] Buchenroth also provided an affidavit explaining that she helped promote and maintain the Facebook page and the UPS Resource Group. [Record No. 32-2, p. 2] The Facebook posts attached to the Amended Complaint support the idea that the Page was used as an official Union page and not a private page of Philbeck's. For example, one post stated, "Teamsters Local 651 page created in 2010 has been informed *we* are in the top 10% of union pages in the entire country," while another invited viewers to "share *our* page." [Records Nos. 32-7, 32-8 (emphasis added)]

Philbeck provides unsworn affidavits from multiple individuals contesting the ownership of the Facebook page. None of the affidavits provided include an attestation that they were signed under penalty of perjury. *See* 28 U.S.C. § 1746 (requiring that the writing is declared true under penalty of perjury); *Worthy v. Mich. Bell Tel. Co*., 472 F. App'x 342, 343-44 (6th Cir. 2012) (stating that affidavits or declarations must be either be sworn in front of an authorized officer or "made under penalty of perjury, certified as true and correct, dated, and signed" to be considered as competent summary judgment evidence). Because none of the affidavits provided by Philbeck include language that they were made under penalty of perjury, the Court will not consider them for purposes of disputing the plaintiff's motion for summary judgment.

In summary, the Court concludes that the Facebook page and UPS Official Resource Group are property of the Union because they were created to communicate with Union members, held out as official Union pages, promoted on business cards and the official website, and other members of the Union had administrative privileges.

**B.    Individual Claims**

The Court now turns to the individual claims asserted by the Union and the proper remedy to be imposed.

**i.    Conversion**

Conversion is the "wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014).  To prove conversion, the plaintiff must establish the following elements:

> (1) the plaintiff had legal title to the converted property;
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
> (4) the defendant intended to interfere with the plaintiff's possession;
> (5) the plaintiff made some demand for the property's return which the defendant refused;
> (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
> (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005) (quoting 90 C.J.S. Trover and Conversion § 4 (2004)).

Local 651 contends that Philbeck converted the Union's social media accounts for his own personal use and deprived the Union access to them.  It alleges that he changed passwords and removed former administrators on the accounts.  Philbeck asserts that he did not remove

any property belonging to the plaintiff's Union.  Here, it has already been established that the Facebook page and resource group are the property of the Union and the plaintiff had the right to possess them at the time of the alleged conversion.  The defendant removed administrators and banned certain Union members from the Facebook page and resource group, which interferes with the plaintiff's right to use and enjoy the social media accounts.  [Record No. 32-2, p. 3; Record No. 32-1, p. 2]  Philbeck exercised control over the page in a manner inconsistent with the plaintiff's use and enjoyment and the defendant's actions were the legal cause of the conversion.  The plaintiff suffered damage because of the inaccurate information being disseminated to members of the Union and it was hindered in its ability to communicate with the Union members.  [Record No. 32-2, p. 3]  Philbeck has not set forth any evidence that would dispute a material fact regarding the conversion of the Facebook page.

Accordingly, the plaintiff's motion for summary judgment will be granted on its conversion claim.

### ii.     Invasion of Privacy

An individual can invade another's privacy by appropriating another's name or likeness.  *See McCall v. Courier-Journal & Louisville Times Co.,* 623 S.W.2d 882, 887 (Ky. 1981).  Section 652C of the Restatement (Second) of Torts creates liability for "the defendant's appropriation, to his own use or benefit, of the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness."  *Bowling v. Bowling*, No. 91-5920, 1992 U.S. App. LEXIS 18505, at *14 (6th Cir. 1992).  This cause of action may provide redress to a plaintiff whose name is used without permission to advertise a business or product or it can be used "when [a] defendant makes use of the plaintiff's name or likeness for his own purpose and benefit, even though the use is not a commercial one, and

-10-

even though the benefit sought to be obtained is not a pecuniary one." *Id.* (citing Restatement

(Second) of Torts 652C cmt. b.\).

> In order that there may be liability under the rule stated in this Section, the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness.  It is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff, so long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity.

Restatement (Second) of Torts, 652C, cmt. c.  A person can appropriate someone's name or

likeness by utilizing the goodwill associated with a person's name.  *See Thornton v. Western*

*& Southern Fin. Group Beneflex Plan*, 797 F. Supp. 2d 796, 815 (W.D. Ky. 2011).

Local 651 asserts that Philbeck misappropriated the Union's name and likeness.  It

believes that Philbeck has used the reputation and prestige of Teamsters Local 651 for his own

benefit by controlling the social media accounts and passing them off as official Union pages.

Philbeck utilized the Union's name and likeness by continuing to hold the Facebook

pages out as sources of Union information.  [Record Nos. 32-7, 32-12]  He benefitted from the

goodwill associated with the Union's reputation and prestige by utilizing Local 651's name

and likeness and posting as if the page was an official page of the Union.  Philbeck has not

provided any information creating a genuine issue of material fact disputing his use of the

Facebook page.

Accordingly, the Court concludes that Philbeck misappropriated the name and likeness

of the Union and summary judgment will be granted in favor of the Union on this claim.  The

Union's remaining claims are all without merit or it failed to present adequate proof on the

claims.  However, the Court will briefly discuss the remaining claims in turn.

### iii.     Section 301 of the LMRA

Local 651 also asserts that Philbeck violated Section 301 of the LMRA by breaching the International Brotherhood of Teamsters Constitution by making extraordinary expenditures and failing to relinquish Union property.  [Record No. 68-1, p. 8]  Additionally, it contends Philbeck violated the Constitution by misappropriating the use of Union logos. Because the Union is only seeking injunctive relief regarding the Facebook pages, the Court will only address the merits of its breach of contract claim relating to violations stemming from the use and control of the Facebook pages.

Local 651 asserts that Philbeck violated Article XXII, Section 4(e) of the Union Constitution by failing to relinquish property and violated Article IX, Section 13 for using the marks, labels, and other insignia of the International Union.[1]

Article XXII, Section 4(e) of the International Union Constitution states:

> During the period between the date of election and the end of the term of office, no extraordinary expenditure of Local Union funds shall be made, and no action shall be taken that commits the Local Union to make such extraordinary expenditures in the future, without the approval of the officers-elect and the membership.  An expenditure may be considered to be "extraordinary" if: (a) it is not routine or recurring in the operation of the Local Union, such as, but not limited to, those items set forth in Article VII, Section 2(a)(1); (b) it is for an amount greater than the Local Union would normally pay for the particular item in the ordinary course of its business; (c) it establishes new benefits, or increases the amounts of previously authorized benefits, for Local Union officers or employees; or (d) the payment would have a significant adverse effect on the financial stability of the Local Union and/or affect its ability to provide representational services to the membership.  Nothing contained herein shall relieve the Local Union of the responsibility to arrange for the payment of financial obligations or benefits previously authorized in accordance with the Local Union's Bylaws, on such terms as necessary to preserve the ability of the

---

[1] Both parties spend time re-hashing the arguments made and ruled upon regarding the motion to dismiss.  The Court has already determined that it has subject matter jurisdiction to hear Local 651's breach of contract claim under Section 301 of the LMRA.  [Record No. 57, p. 4]

-12-

Local Union to meet its current financial commitments and provide services to
the membership.

[Record No. 32-3, p. 171]   While this may relate to a claim for a violation of extraordinary

expenditures, the injunction and relief sought related to this claim are only for an injunction

regarding control of the social media accounts.   Refusing to turn over the social media accounts

has no relation to this provision of the Constitution.   Accordingly, Philbeck did not violate

Article XXII, Section 4(e) of the Union Constitution for refusing to turn over passwords of the

social media accounts.

Article IX details the powers and duties of the General Executive Board.   Article IX,

Section 13 specifically states:

> The General Executive Board shall have full control over all marks, labels, and
> other insignia of the International Union, including the right to retake and
> repossess such marks, labels, and insignia and to change the provisions, terms,
> and conditions of all agreements relating to the use, printing, and issuance of
> marks, labels, and other insignia.   The General Executive Board shall also have
> the right to assign from time to time any International officer to act on its behalf
> with respect to all marks, labels, and other insignia.   All subordinate affiliates
> shall be subject to the orders of the General Executive Board, or its designated
> International officer, respecting the use, printing and issuance of marks, labels,
> or other insignia.

[Record No. 32-3, pp. 76-77]  Local 651 asserts "[s]ome of the logos used on the social media

accounts belong to the International Union, and to misappropriate them is a violation of the

International Constitution."   But Local 651 is not the General Executive Board and as is

discussed in more detail below, it has not shown that it owns the trademarks or collective

markings.  Accordingly, this claim also fails.

### iv.   Section 501 of the LMRDA

Local 651 next asserts that Philbeck violated his fiduciary duty to Local 651 and its

members under Section 501 of the LMRDA because he failed to hold Union money and

-13-

property for the benefit of the Union and its members.  It claims he converted credit card rewards points for his own benefit, kept a laptop and camera he received while President, spent "an exorbitant amount on calendars," and paid himself for vacation time he was not entitled to before leaving office.  The Union further contends that he used its social media accounts for his own political gain and to harm his opponents.

> Section 501(a) states:
>
> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.  A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

29 U.S.C. § 501(a).  "[Section] 501 violations generally involve unreasonable and arbitrary actions such as self-dealing or the misuse of union funds. []  We have recognized, however, that § 501 contains nonfinancial aspects and may be violated when union officials cause union members to suffer an invaluable and irreparable loss of democratic rights." *UFCW Local 911 v. UFCW Int'l*, 301 F.3d 468, 477 (6th Cir. 2002).

"Section 501(a) applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them." *Yanity*

*v. Benware*, 376 F.2d 197, 201 (2d Cir. 1967) (internal citations and quotations omitted). "Congress intended unions' constitutions and by-laws to play a major role in shaping these duties." *Anderson v. Int'l Union*, 370 F.3d 542, 553 (6th Cir. 2004).

The plaintiff asserts that Philbeck did not hold Union money and property solely for the benefit of the Union and its members.[2]  It contends that Philbeck failed to Union's social media accounts for the Union's benefit and used them to try and garner support for his own political gain.

In *Brotherhood of Railway, Airline & S.S. Clerks, Freight Handlers, Express & Station Employees v. Orr*, the union sought to have former officers turn over property of the local.  No. CIV-1-76-86, 1977 U.S. Dist. LEXIS 15840 (E.D. Tenn. May 18, 1977).  The former officers refused to transmit the money to the division office after a restructuring of the union occurred. *Id*. at *8.  The plaintiff alleged that the defendants – by retaining possession of the funds and assets of the local union – violated the position of trust they held as former officers of the local and violated the duties imposed upon them by 29 U.S.C. § 501(a).  The court emphasized that the duty was upon the defendants as former officers to deal with the money and property of the Local in accordance with the constitution, by-laws, and any resolutions.  It concluded that the defendants violated their fiduciary duty under § 501(a) because they did not hold the money and property in accordance with the union constitution and statutes.

The Sixth Circuit noted in *Corea v. Welo* that, while "§ 501 is generally regarded as a section designed to prevent fiscal mismanagement and fraud, it also contains nonfinancial

---

[2] To the extent the parties dispute the Court's jurisdiction to entertain the plaintiff's breach of fiduciary duty claim under the LMRDA, the Court has already determined that the Union has a private right of action under § 501(a) and the Court accordingly has subject matter jurisdiction.

aspects. Section 501 'has been interpreted to impose a general fiduciary duty upon union officials, above and beyond monetary involvement.'" 937 F.2d 1132, 1144 (6th Cir. 1991) (quoting *Wade v. Teamsters Local 247*, 527 F. Supp. 1169, 1177 (E.D. Mich. 1981)). The court concluded that the defendant officers did not violate any provision of the International constitution or by-laws, nor did they violate any statutory provisions. And because there was no deprivation of democratic rights, "it was not necessary to invoke the more general fiduciary duties imposed on union officials by § 501." *Id*.

Here the plaintiff fails to specify which section of the Union constitution, by-laws, or statutes Philbeck violated by failing to return and hindering access to the Union's social media accounts. Further, there is no "deprivation of democratic rights" that would allow for an expansion of the fiduciary duties in § 501 by refusing to turn over the passwords to the social media accounts. *Id*. at 1144 (concluding that because no deprivation of democratic rights had occurred, it was not necessary to invoke the more general fiduciary duties imposed by the statute). Accordingly, the Union has failed to meet its burden to show a violation of § 501(a) for the failure to turn over the social media accounts.

Further, while the Union mentions the conversion of credit card points, keeping a laptop and camera, paying out vacation in violation of the Constitution, and over-spending on calendars, which better fit into the purpose behind § 501(a), the Union does not seek relief on these issues. "Breach of fiduciary duty . . . involve injuries." *UFCW Local 911*, 301 F.3d at 476. And because the Union does not elaborate on its injuries and does not seek relief for any of that property, the claim will be denied.

### v.   Lanham Act and Unfair Competition

Title 15 of the United States Code, Section 1125(a)(1)(A) creates a civil cause of action for:

> [using] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

The plaintiff must establish that it held trademarks, the marks are valid and protectable, it did not consent to the use of those marks, and the use of the marks was likely to cause confusion. *Eat BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 527-28 (E.D. Ky. 2014)*; see also Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F. Supp. 2d 561, 564 (E.D. Ky. 2004). The plaintiff must also show that the false designation has a substantial economic effect on interstate commerce. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). A "federal trademark infringement analysis is identical to Kentucky's common law unfair competition analysis." *Eat BBQ LLC*, 47 F. Supp. 3d at 527. "In commerce" for the purpose of the Lanham Act means "in connection with the sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1).; *Taubman Co*., 319 F.3d at 774.

The Union asserts that the Teamsters' name and logos are distinct trademarks and collective membership markings, including the Teamsters' horses and name on the Facebook page. The Union states some of the International Teamsters' logos are registered trademarks, but others are just distinctive and protectable marks. It believes that it has used the distinctive and protectable marks continuously and conspicuously. Local 651 contends Philbeck used the marks to post about member deals to certain places, like the Kentucky Kingdom.

-17-

Philbeck argues that Local 651 has "no contractual or legal basis nor the right to bring these claims on the International Teamsters behalf or actions before [the] court[]."  [Record No. 77, p. 7]  He asserts this action can only be brought by the General Executive Board because it controls the trademark and collective membership markings.

The first requirement for proving a violation of the Lanham Act is to show that the plaintiff held the trademark.  *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 402 (6th Cir. 2013).  The Union has not demonstrated that it held the trademark or collective markings or that it was granted a license to use the trademarks.  *Cf. Iowa Farmers Union v. Farmers' Educ. & Coop. Union of Am.*, 247 F.2d 809 (8th Cir. 1957) (noting that the union charter granted the defendant the right to use the trademarks of the plaintiff until the charter was revoked).  The plaintiff could also show that it has a "common law right to a trademark" but "only by demonstrating that its use of the mark was deliberate and continuous, not sporadic, casual or transitory."  *Eats BBQ LLC*, 47 F. Supp 3d at 528 (citing *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054-55 (6th Cir. 1999)).  But there is no evidence here that Local 651 was deliberately and continuously using any of the collective markings or trademarks.

Because the plaintiff has failed to provide any evidence that it held the trademarks, its Lanham Act and unfair competition claims fail.

### vi.    Remedy

As discussed above, the Union only succeeds on its conversion and invasion of privacy claims.  The Union requests that Philbeck be ordered to return administrative access for the social media accounts at issue.  While the Union completely fails to discuss the standard for permanent injunctive relief, the Court previously granted its motion for a preliminary injunction.

"In general, the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that for a preliminary injunction the plaintiff must show a likelihood of success on the merits rather than actual success." *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010) (citations and quotation marks omitted). The plaintiff must show (1) it has suffered an irreparable injury; (2) there is no adequate remedy at law; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue a permanent injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, LLC*, 126 S. Ct. 1837, 1839 (2006)).

Inasmuch as the Court has determined that summary judgment should be entered in favor of Local 651 on its invasion of privacy and conversion claims, the requirement for showing actual success on the merits has been satisfied.

Additionally, this Court concluded when it granted the preliminary injunction that there was a threat of irreparable injury if the preliminary injunction was not granted and the injury was not fully compensable by money damages. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (explaining an injury is irreparable if it is not fully compensable by monetary damages). It would be difficult to quantify how much the social media accounts of the Union would be worth. The Court also previously explained that an injunction would be in the public interest and not cause substantial harm to others because keeping Philbeck from posting on the Union's social media accounts would ensure that the resources of the Union are actually run by the Union. Now that the Court has determined that the Union owns the Facebook page, requiring Philbeck to turn over the passwords to all the

-19-

Union's social media accounts is necessary.   Accordingly, a permanent injunction is appropriate.

### C.    Philbeck's Claims

Philbeck claims that Local 651 has violated his rights to free speech and assembly under Section 101 of the LMRDA.   "Generally, a party must assert in its responsive pleading any counterclaim against an opposing party when it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."   *United States v. Eisenberg*, 149 F. Supp. 3d 71, 83 (D.D.C. 2015); *see also* Fed. R. Civ. P.  13 ("A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing parties' claim."); *Tyler v. DH Capital Mgmt.*, 736 F.3d 455, 460 (6th Cir. 2013).  Philbeck failed to file a responsive pleading at all in this matter after the Court denied his motion to dismiss on October 22, 2019.  [Record No. 57] It is improper for Philbeck to attempt to assert counterclaims in a response to a motion for summary judgment, long after his time to file an answer has expired.   Accordingly, Philbeck cannot now assert counterclaims against Local 651.

### D.    Alternative Motion for Default Judgment

Local 651 has requested alternative relief seeking entry of a default judgment against Philbeck. It previously filed a motion for entry of default, which was denied because the defendant had participated in the case.  [Record Nos. 17, 18]  Rule 55 of the Federal Rules of Civil Procedure states that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  "Although the term 'otherwise defend' is

not defined in the federal rules, it is generally understood to include motions attacking service, motions to dismiss, motions for bills of particulars, or motions for summary judgment." *Hammond v. Hofbauer*, No. 2:08-CV-64, 2008 U.S. Dist. LEXIS 44995, at *2 (W.D. Mich. June 9, 2008) (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.10[2][b] (3d ed. 2007); *see also Bright v. Bartlett*, 2019 U.S. Dist. LEXIS 180329, *5-6 (E.D. Tenn. Oct. 18, 2019) (denying a motion for default judgment where the defendant filed a motion to dismiss). Philbeck filed a motion to dismiss, defended his position against the preliminary injunction, filed his own motion for a temporary restraining order, and responded to the motion for summary judgment. Therefore, default judgment is inappropriate.

### E.   Costs and Attorney's Fees

The Union has requested costs and attorney's fees incurred in this action. Typically, "a prevailing party may not ordinarily recover attorney fees in the absence of a statute or enforceable contract providing for a fee award." *Shimman v. International Union of Operating Engr's, Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1974). There is a "bad faith" exception to the American Rule that allows for "attorney fees in certain exceptional cases where the opposing party has acted in bad faith." *Id.* Here, the Union asserts that Philbeck has continued to try and play games with the Union and manipulate this situation to his own benefit. Thus, it contends he acted in bad faith, and awarding costs and fees is appropriate. The plaintiff also asserts that attorney's fees can be granted for violations of Section 301(a) of the LMRA and the Lanham Act.

But both the LMRA claim and the Lanham Act claims have been dismissed, the Union did not prevail on multiple claims it asserted, and – contrary to its assertion – this case is not

an exceptional case warranting the use of the bad faith exception.  Accordingly, the Union's request for attorney's fees and costs is denied.

### F.    Philbeck's Motion for Leave

Philbeck has also filed a motion for leave to modify the declarations of witness statements and requested to increase the number of documents submitted to the Court.  The Court declines to grant this motion because Philbeck was given ample time to prepare his response to the motion for summary judgment and given repeated extensions to file it.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.    Plaintiff International Brotherhood of Teamsters Local 651's motion for summary judgment [Record No. 68] is **DENIED**, in part, and **GRANTED**, in part.

2.    Plaintiff's claims for breach of contract under the LMRA, breach of fiduciary duty under the LMRDA, the Lanham Act, and unfair competition are **DISMISSED**, with prejudice.

3.    Summary judgment is entered in favor of Plaintiff Local 651 on its conversion claim and invasion of privacy claim.

4.    Within thirty days of the entry of this Memorandum Opinion and Order, Defendant Michael Philbeck is **DIRECTED TO DELIVER** the passwords for the social media accounts owned by the Union to an authorized official of the Union for all of the social media accounts purporting to be official Union accounts, including the Teamsters Local 651 Facebook Page, Teamsters Local 651 UPS Member Resource Group, and the Official Teamsters Local 651 Members Resourse [sic] Group.

5.      Defendant Philbeck is **PERMANENTLY ENJOINED** from continuing to administer the social media accounts or any other account that is or could be perceived as an official social media account of the Union while he is not serving as an officer of the Union.

6.      Defendant Philbeck is **PERMANENTLY ENJOINED** as holding himself out as a current officer of the Union during any period in which he is not actively serving as an elected officer of the Union.

7.      Willful violation of this Order may subject any person who commits such an act to criminal and/or civil prosecution for contempt of this Court.

8.      Defendant Michael Philbeck's motion for leave to modify declarations and increase the number of documents [Record No. 80] is **DENIED**.

9.      Local 651's request for attorney's fees and costs is **DENIED**.

Dated:  June 3, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky